Debbie **ESQUIVEL** and Florida Residential Property & Casualty Joint Underwriters Association, Appellants,

v.

**MURRAY GUARD, INC.,** Appellee.

No. 14–97–01432–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 18, 1999.

Rehearing Overruled June 10, 1999.

538

Thomas Lee Bartlett, Houston, for appellants.

Thomas L. Cougill, Houston, for appellees. ·

Panel consists of Justices YATES, AMIDEI, and FOWLER.

## OPINION

WANDA McKEE FOWLER, Justice.

Appellants, Debbie Esquivel and Florida Residential Property & Casualty Joint Underwriters Association ("Esquivel"), appeal from the trial court's order granting summary judgment in favor of appellee, Murray Guard, Inc. ("Murray Guard"). Esquivel brings three points of error, contending the trial court erred in (1) granting summary judgment in favor of Murray Guard on her tort claim; (2) granting summary judgment in favor of Murray Guard on her contract claim; and (3) requiring her to file a supersedeas bond for taxable court costs. We affirm.

### Background

On June 19, 1994, Debbie Esquivel rented a hotel room at the Baytown La Quinta. She asked the clerk where she could park a rented U–Haul moving van containing personal property and towing her car. A clerk told her to park on the street adjacent to the hotel and assured her the van would be safe "because of the security it provided." The next day, Esquivel's van and car were missing.

Esquivel sued La Quinta for negligence, breach of warranty, breach of contract, and violations of the Texas Deceptive Trade Practices Act (DTPA), believing La Quinta was the sole provider of security. During the course of discovery, Esquivel learned that Murray Guard provided security to the La Quinta in question. She joined Murray Guard on August 30, 1996, and Murray Guard filed a motion for sum-

mary judgment asserting that the statute of limitations had run and that the discovery rule did not apply. The court granted the motion and severed Murray Guard.

### Standard of Review

In reviewing the court's order granting summary judgment, we take as true all evidence favoring the non-movant and indulge every reasonable inference in its favor. *See Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997). When a defendant moves for summary judgment on the basis of an affirmative defense, such as a statute of limitations, it must prove conclusively all elements of the affirmative defense as a matter of law and preclude all genuine issues of material fact. *See Velsicol Chem. Corp. v. Winograd*, 956 S.W.2d 529, 530 (Tex.1997); *University of Houston v. Sterling Bank*, 963 S.W.2d 93, 94 (Tex.App.—Houston [14th Dist.] 1997, writ denied). If the plaintiff pleads the discovery rule as an exception to the running of the statute of limitations, the movant must negate that exception as well. *See Winograd*, 956 S.W.2d at 530. If the movant establishes its right to summary judgment, the burden shifts to the non-movant to present summary judgment proof to establish a genuine issue of material fact. *See Sterling Bank*, 963 S.W.2d at 94.

### Point of Error One

Point of error one consists of three subpoints: Esquivel argues the trial court erred in granting summary judgment for Murray Guard on her tort claim because (1) Murray Guard did not negate the discovery rule, (2) Murray Guard did not negate the equitable exclusion rule, and (3) a genuine issue of material fact exists as to whether La Quinta and Murray Guard entered into a joint enterprise.

#### The Discovery Rule

The purpose of limiting the time in which a plaintiff can bring a cause of action is to compel the exercise of a plaintiff's rights within a reasonable time to allow an opposing party to defend itself while witnesses are available and evidence is fresh in their minds. *See Computer Assocs., Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex.1996). The parties agree that Esquivel's causes of action for negligence and violations of the Texas Deceptive Trade Practices Act must be brought within two years after the cause of action accrues. *See* TEX. BUS. & COM.CODE ANN. § 17.566 (Vernon 1987); TEX. CIV. PRAC. & REM.CODE ANN. § 16.003 (Vernon 1986). Generally, a cause of action accrues when a wrongful act causes a legal injury, regardless of when the plaintiff learned of his injury. *See S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex.1996). The discovery rule, however, when applied, tolls the running of the statute of limitations until the plaintiff discovered or should have discovered the nature of his injury. *See Murphy v. Campbell*, 964 S.W.2d 265, 271 (Tex.1997).

The discovery rule applies when an injury is inherently undiscoverable and the evidence of the injury is objectively unverifiable. *See Altai*, 918 S.W.2d at 456. An injury is inherently undiscoverable if "it is difficult for the injured party to learn of the negligent act or omission." *Id.* (quoting *Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex.1988)). It must be "by nature unlikely to be discovered despite due diligence." *Marshall v. First Baptist Church*, 949 S.W.2d 504, 507 (Tex.App.-Houston [14th Dist.] 1997, no writ). It need not be absolutely impossible to discover. *See S.V.*, 933 S.W.2d at 7.

Esquivel admits that she knew of her injury in June of 1994, but she claims she did not know Murray Guard was a cause until La Quinta responded to discovery. Esquivel's contention is similar to the plaintiff's unsuccessful argument in *Russell v. Ingersoll–Rand Co.*, 841 S.W.2d 343, 344 (Tex.1992). In *Ingersoll–Rand*, the plaintiffs argued that the discovery rule tolled the running of the statute of limitations until it could be determined who was

responsible for their injury. The court disagreed, noting that "limitations begin to run when the fact of the injury is known, not when the alleged wrongdoers are identified." *Id.* at 344 n. 3. Similarly, in *Seibert v. General Motors Corp.*, 853 S.W.2d 773 (Tex.App.—Houston [14th Dist.] 1993, no writ), the plaintiff argued the discovery rule applied because he did not know he had a cause of action against a vehicle manufacturer until he read a news program transcript concerning the safety of the seatbelt he was wearing at the time of his car accident. *Id.* at 776. We disagreed that the rule applied and held that it applies only to the discovery of the injury. *Id.* at 776–77. Because the plaintiff's injury was discoverable and, indeed, discovered on the date of the collision, the running of the statute of limitations was not tolled by the discovery rule. *Id.* at 777.

In short, Esquivel's attempt to toll the running of the limitation because she was not aware Murray Guard was a potential wrongdoer runs afoul of the language in *Ingersoll–Rand* and *Seibert* and is counter to the purpose of the discovery rule. We hold that the discovery rule does not apply based on Esquivel's failure to determine that Murray Guard was a potential defendant. Murray Guard negated the discovery rule as a matter of law, and Esquivel's summary judgment proof does not raise a genuine issue of material fact as to its applicability.

### The Hilland Exception

■■■■ Next, Esquivel argues Murray Guard did not negate the equitable preclusion rule. As noted above, the purpose of statutes of limitation is to preclude stale claims and to give the defendant the opportunity to defend the lawsuit while witnesses are available and information is fresh in their minds. *See Altai,* 918 S.W.2d at 455; *Vinson & Elkins v. Moran,* 946 S.W.2d 381, 413 (Tex.App.—Houston [14th Dist.] 1997, writ dism'd by agr.). In some circumstances, however, the potential defendant is on notice of the claim

against it, and it is not prejudiced by being sued after the limitations period expired. In *Continental Southern Lines, Inc. v. Hilland,* 528 S.W.2d 828 (Tex.1975), the Texas Supreme Court outlined an equitable exception to the statute of limitations under these circumstances. The *Hilland* exception does not apply when the plaintiff names an existing but improper entity; rather, it only applies when the plaintiff files a lawsuit against the correct party and uses an incorrect name. *See Enserch Corp. v. Parker,* 794 S.W.2d 2, 4–5 (Tex. 1990). In the latter instance, the petition will relate back to the date of the original filing once the plaintiff correctly names the defendant; in the former, it does not relate back. *See id.* at 5. In this case, Esquivel did not sue Murray Guard under an incorrect name; rather, she sued a separate entity under its correct name. Thus, Esquivel's petition does not relate back to the date she sued La Quinta, and her argument is without merit.

### Joint Enterprise Rule

■■■■ Next, Esquivel argues that, under the joint enterprise rule, her joinder of Murray Guard relates back to the date she sued La Quinta. Under this rule, courts impute liability to one who was not an active wrongdoer but who is so closely connected to the wrongdoer to warrant the imposition of vicarious liability. *See, e.g., Shoemaker v. Estate of Whistler,* 513 S.W.2d 10, 13 (Tex.1974). To establish a joint enterprise, the plaintiff must prove (1) an express agreement; (2) a common purpose; (3) a common pecuniary interest; and (4) an equal right to control the enterprise. *See Triplex Communications, Inc. v. Riley,* 900 S.W.2d 716, 718 (Tex.1995). On summary judgment, the defendant has the burden to negate the existence of a joint enterprise. *See Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex. 1994).

■■■■ As an initial matter, we note that the joint enterprise theory is a vehicle to impose vicarious liability, not, as Es-

quivel contends, a relation-back method. "The theory of joint enterprise is to make each party thereto the agent of the other and thereby to hold each responsible for the negligent act of the other." *Shoemaker*, 513 S.W.2d at 14; *see also* RESTATEMENT (SECOND) OF TORTS, § 491 (1965). Generally, an employer/employee relationship would not qualify as a joint enterprise because there is no mutuality of control-the employer has control over the employee and usually is responsible for the actions within the course and scope of his job, but the employee does not have the right to control the employer. *See Shoemaker*, 513 S.W.2d at 16 (rejecting the argument that a joint enterprise exists where one party occupies a position of authority and has overriding control over another).

■ In this case, the summary judgment proof establishes, as a matter of law, that there was no joint enterprise. Murray Guard's summary judgment proof included the contract between it and La Quinta. The contract requires Murray Guard to provide security services in exchange for an hourly rate of $7.66. The contract specifically states that Murray Guard will be a "contractor" and that La Quinta "wishes to employ" Murray Guard. All security guards are employees of Murray Guard, and Murray Guard is exclusively responsible for their salaries, taxes, and expenses. Murray Guard agrees to indemnify La Quinta for any wrongful acts or negligence and to reimburse La Quinta for expenses it incurs due to defaults under the agreement. Murray Guard is obligated to maintain insurance. Murray Guard promises to use its "best effort" to honor a request from La Quinta with respect to the discharge of any employee whom La Quinta determines fails to meet required standards set forth in the agreement. Both parties have the right to cancel the contract, but only La Quinta may change or amend a document entitled "Guard Orders." Murray Guard is allowed to provide "*some* guest services"

(emphasis in contract), but the Guard Orders specifically state that this is not routinely authorized. While La Quinta provides a radio for contact with the front desk, Murray Guard provides all other equipment. La Quinta issues keys to guards, which must be turned in at the end of the shift along with other La Quinta equipment. A second attachment, "Statement of Work," outlines rules and responsibilities. It uses mandatory language and includes items such as the guard's responsibility to report improper lighting and use only necessary force. This attachment states that a guard shall not admit liability on the part of La Quinta and that he should never hesitate to ask for assistance from the property manager.

The contract establishes that the relationship between La Quinta and Murray Guard is strictly employer and employee. La Quinta exercises significant control over Murray Guard, but Murray Guard does not have a reciprocal right to control La Quinta. In fact, Murray Guard is expressly limited in its ability to control La Quinta, as noted by the requirement that it may not render guest services and that it must return La Quinta keys at the end of a shift. This proof is germane to a right of control. Further, given the proof that Murray Guard received an hourly rate in return for the provision of security services, there is no common pecuniary interest. Thus, Murray Guard negated two elements of joint enterprise, and the burden shifted to Esquivel to raise a genuine issue of material fact as to these elements.

Esquivel argues she satisfied her burden with the deposition of Thomas K. Worley, a vice-president of Murray Guard. Worley testified that La Quinta approved the Murray Guard shifts, decided how many guards would be provided, prepared the Statement of Work and Guard Orders, and in consultation with Murray Guard, decided the scope of the security guards' duties. This proof does not establish an equal right to control the enterprise, it only supports a contention that La Quinta had a

right to control Murray Guard. In addition, it does not raise a genuine issue of material fact as to a common pecuniary interest. In short, Esquivel did not meet her burden.

Because Murray Guard established that the statute of limitations had run and that Esquivel was not entitled to any tolling of the limitations period or relating back of her petition, we overrule point of error one.

### Point of Error Two

In her second point of error, Esquivel argues that she has a valid breach of contract and breach of warranty claim, and that the four year statute of limitations should apply to them. She argues that she can file these claims because she is a third-party beneficiary of the contract between La Quinta and Murray Guard.

Esquivel bases her contention on the language of the contract, which states that Murray Guard shall furnish guards "for the purpose of securing persons and property of guests and employees of La Quinta...." She contends this specifically identifies her as a party who was intended to be benefitted by the contract. Alternatively, she contends that whether she was an intended beneficiary is a question for the jury, so summary judgment was improper.

■■ Parties are presumed to contract only for their own benefit. *See Loyd v. ECO Resources*, 956 S.W.2d 110, 134 (Tex.App.—Houston [14th Dist.] 1997, no writ). A third party may sue and recover for breach of contract only if the contracting parties entered into the contract directly and primarily for his benefit. *See id.* The parties' intention is the primary consideration in determining whether a third party may enforce a contract. *See Economy Forms Corp. v. Williams Bros. Constr. Co., Inc.*, 754 S.W.2d 451, 455 (Tex.App.—Houston [14th Dist.] 1988, no writ). In determining the parties' intention, we must examine the contract in its entirety, and all of its provisions must be considered and construed together. *See id.* at 456. There is a strong presumption against finding that a third party is a beneficiary of a contract. *See Marine Creek Partners, Inc. v. Caldwell*, 926 S.W.2d 793 (Tex.App.—Fort Worth 1996, no writ). Any doubts are resolved against a finding of the existence of a third-party beneficiary. *See MJR Corp. v. B & B Vending*, 760 S.W.2d 4, 19 (Tex.App.—Dallas 1988, writ denied).

■■ Texas jurisprudence recognizes three types of third-party beneficiaries: donee, credit, and incidental. *See Southwestern Bell Tel. Co. v. John Carlo Texas, Inc.*, 813 S.W.2d 613, 621 (Tex.App.—Houston [14th Dist.] 1991), *reversed and remanded on other grounds*, 843 S.W.2d 470 (1993); *Republic Nat'l Bank v. National Bankers Life Ins. Co.*, 427 S.W.2d 76, 80 (Tex.Civ.App.—Dallas 1968, writ ref'd n.r.e.). Only a donee or credit beneficiary may recover on a contract; an incidental beneficiary may not. *See Republic Bank*, 427 S.W.2d at 80. Thus, we will review donee and creditor beneficiaries to determine if Esquivel qualifies as either.

■■ A person is a donee beneficiary if the performance of the contract inures to his benefit as a gift. *See Brunswick Corp. v. Bush*, 829 S.W.2d 352, 354 (Tex.App.—Fort Worth 1992, no writ). An example is a prenuptial agreement in which a prospective bride promises to execute a will to benefit her prospective husband's children from a previous marriage. *See MJR Corp.*, 760 S.W.2d at 11. A donee beneficiary is not likely to be the intended beneficiary of a business agreement. *See id.* at 11, 18. A person is a donee beneficiary only if a donative intent expressly or impliedly appears in the contract. *See John Carlo*, 813 S.W.2d at 621. A party is a creditor beneficiary if no intent to make a gift appears from the contract, but performance will satisfy an actual or asserted duty of the promisee to the beneficiary. *See Economy Forms Corp. v. Williams Bros. Constr. Co., Inc.*,

754 S.W.2d 451, 456 (Tex.App.—Houston [14 th Dist.] 1988, no writ). The duty may be an indebtedness, contractual obligation, or other legally enforceable commitment to the third party. *See MJR*, 760 S.W.2d at 11. The promisee must intend that the beneficiary will have the right to enforce the contract. *Id.* at 16.

■ Since the contract between La Quinta and Murray Guard evidences a business relationship, before Esquivel can be an intended third-party beneficiary, she must qualify as a creditor beneficiary. Reviewing the contract, we find no evidence of an indebtedness, contractual relationship, or legally enforceable commitment, either actual or asserted, which would support Esquivel's contention that she is an intended third-party beneficiary. Although the contract specifically states that guards are furnished for the purpose of securing the persons and property of La Quinta guests, it immediately thereafter states that "no guarantee is given or implied relative to this purpose." Further, construing the contract as a whole, as we must, the parties' intent is to delineate the parameters of the employment relationship between them, setting forth rules, regulations, duties, and obligations. For example, the contract specifies that La Quinta will pay Murray Guard $7.66 per hour per guard. It is illogical that the parties would intend for Esquivel to be able to enforce this obligation.

■ Still, Esquivel contends that testimony of Patrick Devine, La Quinta's security director, establishes that she was an intended beneficiary. Mr. Devine testified that La Quinta intended to provide security for the benefit of its guests. Devine's testimony is irrelevant; we look only to the four corners of the agreement to determine the parties' intent. We glean intent from what the parties said in their contract, not what they allegedly meant. *See Derr Constr. v. City of Houston*, 846 S.W.2d 854, 860 (Tex.App.—Houston [14 th Dist.] 1992, no writ). We conclude that Esquivel was not an intended third-party beneficiary.

■ Next, Esquivel argues that the issue of whether she was a third-party beneficiary is a matter for the jury when the matter is controverted, and that, therefore, the trial court erred in granting summary judgment on her contract claim. When a case involves the interpretation of a contract and the contract is unambiguous, summary judgment is appropriate. *See Derr*, 846 S.W.2d at 862. As we have stated, the contract clearly shows that Esquivel is not a third party entitled to enforce the contract. Hence, there is no ambiguity, and summary judgment was appropriate.

■ Esquivel also contends that "by agreeing to provide security services" for La Quinta guests, Murray Guard made certain implied warranties, and that these claims are not time-barred, as they are governed by a four year statute of limitations. Her breach of warranty claim is strictly based on the contract between La Quinta and Murray Guard. Because she is not a donee or creditor beneficiary and cannot enforce contractual rights under that contract, she cannot sue for breach of implied warranty based on that contract. Privity is necessary to make such a claim. *See Solis v. Evins*, 951 S.W.2d 44, 47 (Tex. App.—Corpus Christi 1997, no writ) (holding that privity of contract is an essential element to any recovery based on contract); *Jensen Constr. Co. v. Dallas County*, 920 S.W.2d 761, 772 (Tex.App.—Dallas 1996, writ denied) (same). Esquivel had no privity with Murray Guard.

We overrule Esquivel's second point of error.

### Point of Error Three

■ In her third and final point of error, Esquivel contends that the trial court erred in requiring her to file what she calls a supersedeas bond to cover taxable court costs. The trial court's order granting summary judgment ordered Es-

quivel to pay Murray Guard's taxable court costs. Under Texas Rule of Civil Procedure 129, Esquivel was to pay these costs within ten days after demand for payment. TEX.R. CIV. P. 129.

 After entry of judgment, Murray Guard sought a court order requiring Esquivel to pay a bond pursuant to Texas Rule of Appellate Procedure 24. Rule 24 covers bonds intended to supersede the enforcement of the judgment. *See* TEX. R.APP. P. 24.1(a). In the trial court, and on appeal, Murray Guard asserted that rule 24.1(e) authorized the trial court to order the bond.[1] But, Esquivel has not requested or otherwise attempted to supersede the judgment in any way, much less by any method listed in rule 24.1(a). Consequently, Rule 24 does not apply, and cannot be the basis for the trial court's ruling.

Furthermore, the parties have cited us to no other rules of procedure that would support the trial court's order. We, also, have been unable to locate any rule to support the order. As a result, we agree with Esquivel that the trial court did not have authority to order her to post a bond. But, even though the trial court entered an order it did not have authority to enter, apparently, Esquivel did not post a bond. Thus, with the issuance of this opinion, Esquivel has avoided compliance with the order granting bond on appeal, and any controversy regarding the court's order has ceased to exist. Consequently, for this appeal, her argument is moot. *See Two Pesos, Inc. v. Gulf Ins. Co.*, 901 S.W.2d 495, 499 (Tex.App.—Houston [14th Dist.] 1995, no writ). Furthermore, the order appears to contemplate only an appeal to this court. Should Esquivel file a petition for writ of error to the Texas Supreme Court, the court and Murray Guard cannot rely on the order to force Esquivel to post bond for further appeal. Murray Guard has an adequate remedy under the rules of

civil procedure. *See* TEX.R. CIV. P. 129, 130. Under these rules, Murray Guard can simply execute on the judgment awarding it costs. *See* TEX.R. CIV. P. 129, 130.

Thus, because the point of error is moot for purposes of this appeal, we overrule point of error three, and we affirm the judgment of the trial court.

---

1. Rule 24.1(e) gives the trial court authority to make any order necessary to adequately protect a judgment creditor from loss or damage caused by the appeal. *See* TEX.R. APP. P. 24.1(e).